```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                            16 Cr. 338 (PKC)

 5   THOMAS C. DAVIS,

 6                  Defendant.

 7   ------------------------------x

 8                                           New York, N.Y.
                                             May 16, 2016
 9                                           11:20 a.m.

10
     Before:
11
                          HON. P. KEVIN CASTEL,
12
                                             District Judge
13

14                          APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BROOKE CUCINELLA
17   DANIEL S. GOLDMAN
          Assistant United States Attorneys
18
     LATHAM & WATKINS
19        Attorneys for Defendant
     CHRISTOPHER J. CLARK
20   BENJAMIN A. NAFTALIS
           -and-
21   FISH & RICHARDSON
     THOMAS M. MELSHEIMER
22

23

24

25
```

 1            (Case called)

 2            MS. CUCINELLA:  Brook Cucinella and Daniel Goldman on

 3   behalf of the government.  Good morning, your Honor.

 4            MR. CLARK:  Good morning, your Honor, Chris Clark,

 5   Latham & Watkins, for the defendant, Mr. Davis.  With me is my

 6   partner, Ben Naftalis, and cocounsel, Tom Melsheimer from Fish

 7   & Richardson from Dallas.

 8            THE COURT:  Good to see you all.

 9            This is the defendant's first appearance, is that

10   correct?

11            MS. CUCINELLA:  That is correct, your Honor.

12            THE COURT:  Mr. Davis, let me begin by informing you

13   of certain rights that you have.  You have the right to be

14   informed of the charges against you, to consider whether

15   counsel should be appointed, whether you should be released

16   while awaiting trial or if you happen to plead guilty awaiting

17   sentencing.

18            You have the right to remain silent and are not

19   required to make any statements.  Anything that you do say can

20   be used against you.  Even if you have made any statements to

21   the authorities, you need not make further statements.  Do you

22   understand these rights?

23            THE DEFENDANT:  Yes, sir.

24            THE COURT:  And you have the right to be represented

25   by counsel during this court proceeding and any future court

1    proceedings and any time you are questioned by authorities.  If

2    you cannot afford an attorney, I will appoint one to represent

3    you.  Do you understand these rights?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  I understand you have retained counsel, is

6    that correct?

7            THE DEFENDANT:  Yes, sir, I have.

8            THE COURT:  Now, in this case I understand that you

9    have waived indictment and have agreed to allow the government

10   to proceed on an information signed by a prosecutor, is that

11   correct?

12           THE DEFENDANT:  Yes, sir, it is.

13           THE COURT:  You have certain alternatives.  For

14   example, instead of waiving indictment, you would be eligible

15   to have a hearing on whether the government has probable cause

16   to arrest you or hold you as answerable on these charges.  Do

17   you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And by waiving indictment you are giving

20   up those rights.  You understand that?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Now, before I accept any sort of a guilty

23   plea from you I must satisfy myself that you understand the

24   rights you would have if this case went to trial and the rights

25   that you are giving up by pleading guilty.  Also that you

1   understand the consequences of pleading guilty and there is a

2   factual basis for your plea of guilty.

3          So in a moment I am going to have the clerk place you

4   under oath and I am going to ask you certain questions and

5   inform you of certain rights.  If I ask you something or I tell

6   you something and you don't quite understand, I'll put it into

7   different words.

8          Also, if at any point today you wish to speak in

9   private with your lawyers, I'll give you the opportunity to do

10  that as well.  Do you understand all of that?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And is it in fact your desire to waive

13  indictment and enter guilty pleas to 12 counts of an

14  information?

15         THE DEFENDANT:  Yes, sir, it is.

16         THE COURT:  I am going to ask the court deputy to

17  administer the oath.

18         (Defendant sworn)

19         THE COURT:  Mr. Davis, you are now under oath and your

20  answers to my questions are subject to the penalties of perjury

21  or of making a false statement if you do not answer truthfully,

22  and also any statements you make today may be used in any such

23  prosecution.  Do you understand that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  How old are you, sir?

 1              THE DEFENDANT:  Sixty-seven.

 2              THE COURT:  How far did you go in school?

 3              THE DEFENDANT:  I finished graduate school.

 4              THE COURT:  What degree in graduate school?

 5              THE DEFENDANT:  I got a master's in business

 6    administration.

 7              THE COURT:  Are you now or have you recently been

 8    under the care of a medical doctor?

 9              THE DEFENDANT:  I am not currently now.

10              THE COURT:  Have you ever been treated for a mental

11    illness?

12              THE DEFENDANT:  No, sir.

13              THE COURT:  Have you ever been addicted to any

14    substance, alcohol, marijuana, prescription medications,

15    cocaine, heroin, anything?

16              THE DEFENDANT:  No, sir.

17              THE COURT:  How do you feel today?

18              THE DEFENDANT:  I feel just fine.

19              THE COURT:  Is your mind clear?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  Counsel have any doubts as to the

22    defendant's competence to plead?

23              MR. CLARK:  I do not, your Honor.

24              THE COURT:  Based upon Mr. Davis' responses to my

25    questions and my observations of his demeanor, I find that he

1    is fully competent to enter an informed plea.  I will ask the

2    clerk to place before Mr. Davis his signed waiver of

3    indictment.

4            Did you in fact sign the waiver of indictment,

5    Mr. Davis?

6            THE DEFENDANT:  Yes, sir, I did.

7            THE COURT:  Do you understand that you had the right

8    to have evidence underlying the charges presented to a grand

9    jury of 23 people and have those people decide by a majority

10   vote whether you should be charged or not?

11           THE DEFENDANT:  Yes, I understand.

12           THE COURT:  Do you understand that by signing the

13   waiver of indictment you give up that right and permit the

14   government to file the charges solely on the signature of the

15   United States Attorney?

16           THE DEFENDANT:  Yes, sir, I understand.

17           THE COURT:  Did you read the waiver before you signed

18   it?

19           THE DEFENDANT:  Yes, I did.

20           THE COURT:  Did you discuss it with your lawyer before

21   you signed it?

22           THE DEFENDANT:  Yes, I did.

23           THE COURT:  Did you understand it before you signed

24   it?

25           THE DEFENDANT:  Yes, sir.

1        THE COURT:  I find that the waiver of indictment is

2   knowing and voluntary and it is accepted.

3        Can counsel confirm that defendant has received the

4   15-page sealed information in this case?

5        MR. CLARK:  He has.  He has reviewed it and we waive

6   its public reading, your Honor.

7        THE COURT:  Public reading is waived.

8        Let me ask you, Mr. Davis, have you in fact discussed

9   the charges contained in the sealed information, the 12 counts,

10  with your lawyers?

11       THE DEFENDANT:  Yes, sir, I have.

12       THE COURT:  Have you had enough time to consider all

13  of your options in this case?

14       THE DEFENDANT:  Yes, I have.

15       THE COURT:  Are you satisfied with your lawyer's

16  representation of you?

17       THE DEFENDANT:  Yes, sir, I am.

18       THE COURT:  I am now going to explain to you the

19  rights that you would have if this case went to trial and the

20  rights that you are giving up by pleading guilty.

21       Under the Constitution and laws of the United States,

22  you are entitled to a speedy and public trial on the charges

23  contained in the information.  Do you understand that?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  If there were a trial, you would not have

1    to prove that you were innocent.  The government would be

2    required to prove each element of each crime by proof beyond a

3    reasonable doubt.  Before you could be found guilty, a jury of

4    12 people would have to agree unanimously that you were guilty.

5    Do you understand that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  If there were a trial, at every stage of

8    your case you would be entitled to be represented by a lawyer;

9    and if you could not afford a lawyer, one would be appointed at

10   public expense.  Do you understand all that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  If there were a trial, the witnesses for

13   the government would have to come to court to testify.  You

14   would be able to see and hear them.  Your lawyer would have the

15   right to question them through cross-examination.  Your lawyer

16   would have the right to object to evidence offered by the

17   government.  Your lawyer could present evidence and could ask

18   the Court to compel witnesses to appear at trial on your

19   behalf.  Do you understand all that?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  If there were a trial, you would have the

22   right to testify if you chose to do so.  You could come up here

23   and take the witness stand.  Also, you would have the right not

24   to testify and no one would be permitted to draw any inference

25   or suggestion of guilt from the fact that you decided not to

 1   testify.  Do you understand all that?

 2               THE DEFENDANT:  Yes, sir.

 3               THE COURT:  If there were a trial and the jury found

 4   you guilty, you would have the right to appeal that finding.

 5   Do you understand that?

 6               THE DEFENDANT:  Yes, sir.

 7               THE COURT:  Now, those are the rights you would have

 8   if you proceeded to trial.  If you choose to enter a plea of

 9   guilty and I accept that plea of guilty, there will be no

10   trial.  You will proceed to the sentencing phase in which the

11   Court will determine the punishment to be imposed on you.  Even

12   now you have the right to change your mind and instead of

13   pleading guilty you may plead not guilty and go to trial.

14               Do you wish to plead not guilty and go to trial?

15               THE DEFENDANT:  No, sir.

16               THE COURT:  I am going to go through a brief

17   description of the charges and the sentence which is the

18   maximum sentence you are exposed to for the charges.  This

19   information is set forth in the plea agreement which we will

20   discuss this morning.

21               Count One charges you with conspiracy to commit

22   securities fraud by reason of your agreement to participate in

23   a scheme to commit insider trading relating to the securities

24   of Dean Foods Company and Darden Restaurants, Inc., from in or

25   about 2008 through in or about 2014.  Do you understand that?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  This charge, Count One, carries a maximum

3   term of five years' imprisonment, a maximum term of supervised

4   release of three years, a maximum fine of the greatest of

5   $250,000, twice the gross pecuniary gain derived from the

6   offense or twice the gross pecuniary loss to persons other than

7   yourself resulting from the offense, and a $100 mandatory

8   special assessment.  You understand that?

9        THE DEFENDANT:  Yes, sir.

10       THE COURT:  Count Two charges you with conspiracy to

11  commit wire fraud by reason of your agreement to participate in

12  the scheme to commit wire fraud from in or about 2008 through

13  in or about 2014.  This charge carries a maximum term of 20

14  years' imprisonment, a maximum term of three years' supervised

15  release, a maximum fine of the greatest of $250,000, twice the

16  gross pecuniary gain derived from the offense or twice the

17  gross pecuniary loss to persons other than yourself resulting

18  from the offense, and a mandatory $100 special assessment.  Do

19  you understand all of that?

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  Counts Three, Four, Five, and Six each

22  charges you with securities fraud, in violation of federal

23  statutes and regulations for your participation in insider

24  trading relating to the securities of Dean Foods in or about

25  May 2012, July 2012, and September 2012.  Do you understand

1    that?

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  And Count Six charges you with securities

4    fraud for participating in insider trading relating to the

5    securities of Darden in or about August 2013.  Do you

6    understand all that?

7                THE DEFENDANT:  Yes, sir.

8                THE COURT:  And each of these counts, Counts Three,

9    Four, Five, and Six, carries a maximum term of imprisonment of

10   20 years, a maximum term of supervised release of three years,

11   a maximum fine of the greatest of $5 million, twice the gross

12   pecuniary gain derived from the offense, or twice the gross

13   pecuniary loss to persons other than yourself resulting from

14   the offense, and a mandatory $100 special assessment.  Do you

15   understand all that?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Counts Seven, Eight, Nine, and Ten charge

18   you with wire fraud for your participation in a scheme to

19   commit wire fraud in or about May 2012, July 2012, September

20   2012, and in or about August 2013.  Each of these counts,

21   Seven, Eight, Nine, and Ten, carries a maximum term of

22   imprisonment of 20 years, a maximum term of supervised release

23   of three years, a maximum fine of the greatest of $250,000,

24   twice the gross pecuniary gain derived from the offense or

25   twice the pecuniary loss to persons other than yourself

1    resulting from the offense, and a $100 mandatory special

2    assessment.  Do you understand all that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Count Eleven charges you with committing

5    obstruction of justice in or about May and June 2014.  Count

6    Eleven carries a maximum term of 20 years' imprisonment, a

7    maximum term of three years' supervised release, a maximum fine

8    of the greatest of $250,000, twice the gross pecuniary gain

9    derived from the offense or twice the gross pecuniary loss to

10   persons other than yourself resulting from the offense, and a

11   $100 mandatory special assessment.  Do you understand all that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Count Twelve charges you with the crime of

14   perjury, for making false statements under oath in May 2015 in

15   a deposition or examination taken by the United States

16   Securities and Exchange Commission.  Do you understand that's

17   what you are charged with?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Count Twelve carries a maximum term of

20   five years' imprisonment, a maximum term of three years'

21   supervised release, a maximum fine of the greatest of $250,000,

22   twice the gross pecuniary gain derived from the offense or

23   twice the gross pecuniary loss to persons other than yourself

24   resulting from the offense, and a $100 mandatory special

25   assessment.  Do you understand all that?

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Now, with respect to supervised release,

3    you should be aware that there are terms and conditions

4    attached to it.  And if you do not live up to those terms and

5    conditions, you can be returned to prison for the full period

6    of supervised release.  So say at the time of sentencing you

7    receive a prison term to be followed by a period of, for

8    example, three years' supervised release and you live up to the

9    terms of supervised release for two years but then you violate

10   one of the terms and conditions.  You can be returned to prison

11   for a full period of three years.  That's the way supervised

12   release works.  Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Are you a United States citizen?

15             THE DEFENDANT:  Yes, I am.

16             THE COURT:  By pleading guilty you give up valuable

17   civil rights, such as the right to vote, to hold public office,

18   to sit on a jury, to possess a firearm, to hold other licenses

19   or to obtain certain government benefits.  Do you understand

20   all that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  As part of your sentence the Court must

23   require that you make financial restitution to any person who I

24   find was injured by reason of your criminal conduct.  Do you

25   understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Let me inquire of counsel.  Is the

3     defendant prepared to admit the forfeiture allegations in

4     paragraphs 27 and 28 of the information?

5          MR. CLARK:  He is, your Honor.

6          THE COURT:  Are you, Mr. Davis, serving any other

7     sentence, state or federal, or being prosecuted in any court

8     for any crime?

9          THE DEFENDANT:  No, sir.

10          THE COURT:  In sentencing you I will receive a

11     presentence report prepared by the office of probation that

12     gives me background information and a recommended range of

13     sentence under the sentencing guidelines.  After hearing from

14     your lawyer and from the government, I'll make my own

15     determination of the correct guideline range that applies in

16     your case.  Even after determining the correct guideline range,

17     I need not follow it and can sentence you all the way up to the

18     statutory maximum.  The guidelines are advisory, they are not

19     binding on the Court, and they are only one of the factors that

20     the Court takes into account in deciding the appropriate

21     sentence.  Do you understand all that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And the sentence is determined under a

24     statute which is commonly known as Section 3553(a).  Do you

25     understand that?

1          THE DEFENDANT:  Yes, sir, I do.

2          THE COURT:  The guidelines are just one of the 3553(a)

3    factors.  Do you understand that?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  You will only be permitted to appeal or

6    collaterally attack the sentence I impose on the basis that the

7    sentence is unreasonable or contrary to law.  Do you understand

8    that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  I understand you've entered into a plea

11    agreement with the government, is that correct?

12          THE DEFENDANT:  Yes, sir, I have.

13          THE COURT:  And I have before me a six-page letter

14    agreement bearing the letterhead of the Department of Justice

15    and on the cover page the date May 11, 2016.  I'll ask the

16    clerk to place that document in front of you.  Take a look at

17    it and tell me if that's your plea agreement with the

18    government.

19          THE DEFENDANT:  Yes, sir, it is.

20          THE COURT:  Is that your signature on the last page?

21          THE DEFENDANT:  It is.

22          THE COURT:  Did you read it before you signed it?

23          THE DEFENDANT:  Yes, sir, I did.

24          THE COURT:  Did you discuss it with your lawyers

25    before you signed it?

1          THE DEFENDANT:  I have, yes, sir.

2          THE COURT:  Did you understand it before you signed

3     it?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  Has anyone threatened you or forced you in

6     any way to enter into the plea agreement or to plead guilty?

7          THE DEFENDANT:  No, they have not.

8          THE COURT:  Has anyone given you anything of value or

9     promised you anything in order to get you to enter into the

10    plea agreement or to plead guilty?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  Does the plea agreement contain all of

13    your understandings with the government?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  I want you to know that any prediction,

16    calculation, or estimate that anyone has made to you, including

17    your own lawyers, as to what sentence I might give you is not

18    binding on me, not binding on the Court, and if it turns out to

19    be wrong you will not be permitted to withdraw your guilty

20    plea.  Do you understand all of that?

21         THE DEFENDANT:  Yes, sir, I do.

22         THE COURT:  One of the provisions of your plea

23    agreement is you have agreed to provide substantial assistance

24    and truthful cooperation to the government, including

25    testifying if asked to do so.  Is that correct?

1          THE DEFENDANT:  Yes, sir, it is.

2          THE COURT:  It is up to the government, not up to me,

3     to decide whether your cooperation and assistance to be

4     substantial enough for the Court to ask that I take it into

5     account in sentencing.  I cannot second-guess that decision.

6     But if they do ask me to take account of substantial

7     assistance, it is up to me to decide whether to grant their

8     request.  And if I do take account of substantial assistance it

9     is up to me to decide how much weight or consideration to give

10    to it.  Do you understand all that?

11         THE DEFENDANT:  Yes, sir, I do.

12         THE COURT:  If the government declines to make such a

13    motion or request, or if they do but I decline to accept their

14    recommendation or grant their motion, you will not be permitted

15    to withdraw or plea of guilty.  Do you understand that?

16         THE DEFENDANT:  Yes, sir, I do.

17         THE COURT:  Let me inquire of the government, what are

18    the elements of the crimes charged and what in summary would be

19    the government's evidence on the 12 counts if this case were to

20    go to trial?

21         MS. CUCINELLA:  Your Honor, if this case were to go to

22    trial the government would prove beyond a reasonable doubt the

23    following:  With respect to Count One, that the defendant

24    agreed with at least one other person to commit the defined

25    object, here securities fraud.  I will go through those

elements when I go through the substantive offenses.  Second,
that at least one overt act was taken by the defendant or a
coconspirator to further the conspiracy; and, third, at least
one overt act in furtherance of the conspiracy took place in
the Southern District of New York.

          With respect to the substantive offense and the
defined object of Count One, the government would prove that
the defendant disclosed material nonpublic information, that
the defendant provided the information in breach of a duty to
keep the information confidential and was acting for a personal
benefit; third, that the defendant knew the information was
disclosed in breach of a duty and for personal benefit; fourth,
that the defendant caused another to trade based on the
material nonpublic information he disclosed; and, fifth, that
at least one act in furtherance of the scheme took place in the
Southern District of New York.

          With respect to Count Two, conspiracy to commit wire
fraud, the government would prove beyond a reasonable doubt
that the defendant agreed with at least one other person to
commit the substantive offense of wire fraud, the elements of
which I'll go through in a moment; second, that the defendant
knowingly and willfully participated in the conspiracy; and,
third, at least one act in furtherance of the conspiracy
occurred in the Southern District of New York.

          With respect to Counts Seven through Ten and the

elements or the substantive offense of wire fraud, the
government would prove:  First, that there was either a scheme
or artifice to defraud or a scheme or artifice to obtain money
or property by false and fraudulent pretenses, representations,
or promises; second, that the defendant knowingly and willfully
participated in the scheme or artifice with knowledge of its
fraudulent nature and with specific intent to defraud or that
the defendant knowingly and intentionally aided and abetted
others in the scheme; third, that in executing the scheme to
defraud the defendant used or caused the use of interstate
wires.

          With respect to Count Eleven, the defendant is charged
with two provisions of that statute.  With respect to the
first, the government would prove beyond a reasonable doubt:
First, that the defendant altered, destroyed, mutilated or
concealed or attempted to alter, destroy, mutilate or conceal a
record, document, or other object; second that the defendant
did so with the intent to impair the object's integrity or
availability for use in official proceeding; and, third, that
the defendant did so corruptly.

          With respect to the second provision of that statute,
the government would show:  First, that there was a pending
official proceeding; second, that the defendant had knowledge
of the pending proceeding; and, third, that the defendant
obstructed, influenced, or impeded or attempted to obstruct,

1   influence or impede the official proceeding; and, fourth, that

2   the defendant did so corruptly.

3        Finally, with respect to Count Twelve, the perjury

4   count, the government would show:  First, that the defendant

5   testified or subscribed any written testimony, declaration,

6   deposition, or certificate; second, that the defendant did so

7   having taken an oath or under penalty of perjury; third, that

8   the testimony, declaration, deposition, or certificate was

9   false; fourth, that the false testimony, declaration,

10  deposition, or certificate was material; and, fifth, that the

11  defendant knew that the testimony, declaration, deposition, or

12  certificate was false, that is, it did not result from

13  confusion or mistake, but was intended to deceive.

14       The government would make this showing through, among

15  other things, trading records, phone records, witness

16  testimony, documents provided by various entities and e-mails

17  collected by grand jury subpoenas.

18       THE COURT:  Mr. Davis, please tell me in your own

19  words what you did that leads you to believe that you are

20  guilty of the 12 crimes charged in the information.

21       You can remain seated, sir.

22       THE DEFENDANT:  Your Honor, from about 2008 to 2013 in

23  Dallas, Texas, and elsewhere in the United States, I provided

24  material nonpublic information related to Dean Foods to Billy

25  Walters.  I did so knowing that I had a fiduciary duty in my

role as a director and as the chairman of the board of

directors of Dean Foods to maintain confidentiality about such

information.  Dean Foods is publicly traded on the New York

Stock Exchange in New York, New York.  When I began providing

this material nonpublic information to Billy Walters, I

expected that I would receive personal benefits in the form of

business opportunities and a potential source of capital from

Billy Walters and his associates in exchange providing said

information.  Among other things, I expected to receive a loan

in the amount of $625,000, which I did not fully repay, and a

line of credit in the amount of $400,000, which I drew down

approximately $350,000 and did not fully repay.  I spoke to

Billy Walters and these associates with these personal benefits

prior to and during my providing material nonpublic information

to Billy Walters.  I provided Billy Walters with material

nonpublic information about Dean Foods on several occasions,

including in or about May 2012, June 2012, August 2012, and

September 2012.  I did so using means and instruments of

interstate commerce, including telephone calls, text messages,

and e-mails with Walters and others.

        In or around August 2013, I received public nonpublic

information about Darden Restaurants, Inc. from representatives

of Barrington Capital, L.P, pursuant to a nondisclosure

agreement with Barrington Capital.

        Thereafter, I disclosed material nonpublic information

1   about Darden that I learned from Barrington to Billy Walters.

2   I did so in violation of my duty to keep the information I

3   obtained confidential.  I received personal benefits from both

4   Billy Walters and his associates, including the loans I just

5   described.  Billy Walters was aware that I had received

6   personal benefits, from both him and his associates, in

7   exchange for this disclosure of material nonpublic information.

8   Again, I provided Billy Walters this information using means

9   and instrumentals of interstate commerce, including telephone

10  calls, text messages, and e-mails with Walters and others.

11          On or about May 18, 2015, in New York, New York, I was

12  deposed by the Securities and Exchange Commission.  I

13  understood that I was under oath and obligated to testify

14  truthfully.  However, at this deposition I knowingly and

15  intentionally made false statements to the SEC.  For example, I

16  falsely stated that I had not provided Billy Walters with

17  material nonpublic information.  This statement was false and I

18  knew that it was false at the time I made it.

19          On or about May 28, 2014, I was visited at my home in

20  Dallas, Texas by the Federal Bureau of Investigation.  I

21  understood that I was obligated by law to speak truthfully to

22  the FBI.  However, I unknowingly and intentionally made false

23  statements in response to their questions.  For example, I told

24  the federal agents that I had not provided Billy Walters with

25  material, nonpublic information about Dean Foods.  This

1    statement was false, and I knew that it was false at the time

2    that I made it.

3          In or around May or June 2014, after the FBI visited

4    my home, I knowingly destroyed the prepaid cellular phone that

5    Billy Walters had previously provided me with and in order to

6    covertly provide Billy Walters with material, nonpublic

7    information described above.  Specifically I attempted to

8    dispose of the cellular phone by throwing it into a creek near

9    my home in Dallas.  I did so with the intent both to impair the

10   integrity of the cellular phone and to make it unavailable for

11   any subsequent criminal proceeding.

12         THE COURT:  Did you know what you were doing was wrong

13   and unlawful?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Does the government agree there is a

16   sufficient factual predicate for a plea of guilty to each of

17   the 12 counts?

18         MS. CUCINELLA:  We do, your Honor.

19         THE COURT:  Let me hear your proffer on venue.

20         MS. CUCINELLA:  Your Honor, for Counts One through

21   Ten, Mr. Walters made trades on the New York Stock Exchange and

22   he used a broker located in New York, New York.  With respect

23   to Counts Eleven and Twelve, the official proceeding that was

24   impeded or instructed or attempted to be impeded or obstructed

25   by Mr. Davis was located or was centered in the Southern

District of New York.

1          THE COURT:  Does defense counsel have any basis to

2   challenge the government's venue proffer?

3          MR. CLARK:  We do not, your Honor.

4          THE COURT:  Does defense counsel agree there is a

5   sufficient factual predicate?

6          MR. CLARK:  We do as to Counts One through Twelve,

7   your Honor.

8          THE COURT:  Are you aware of any valid defense that

9   would likely prevail at trial or any reason why your Clint

10  should not be permitted to plead guilty?

11         MR. CLARK:  We are not aware.

12         THE COURT:  Mr. Davis, do you have any questions for

13  me?

14         THE DEFENDANT:  No, sir, I do not.

15         THE COURT:  With respect to Count One, how do you

16  plead, guilty or not guilty?

17         THE DEFENDANT:  Guilty.

18         THE COURT:  Count Two, guilty or not guilty?

19         THE DEFENDANT:  Guilty.

20         THE COURT:  Count Three, guilty or not guilty?

21         THE DEFENDANT:  Guilty.

22         THE COURT:  Count Four, guilty or not guilty?

23         THE DEFENDANT:  Guilty.

24         THE COURT:  Count Five, guilty or not guilty?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  Count Six, guilty or not guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  Count Seven, guilty or not guilty?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  Count Eight, guilty or not guilty?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  Count Nine, guilty or not guilty?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  Count Ten, guilty or not guilty?

11          THE DEFENDANT:  Guilty.

12          THE COURT:  Count Eleven, guilty or not guilty?

13          THE DEFENDANT:  Guilty.

14          THE COURT:  Count Twelve, guilty or not guilty?

15          THE DEFENDANT:  Guilty.

16          THE COURT:  With regard to the forfeiture allegations

17   in paragraphs 27 and 28 of the information, do you admit those

18   allegations or do you deny those allegations?

19          THE DEFENDANT:  Yes, I admit, your Honor.

20          THE COURT:  Based upon your responses to my questions

21   and my observations of your demeanor, I find that you know your

22   rights, you know the consequences of pleading guilty, and there

23   is a factual basis for your plea of guilty.  Your plea of

24   guilty and admission to the forfeiture allegations are

25   accepted.  Further, I find that your plea agreement was

1    knowingly and voluntarily entered into.

2           I am going to order a presentence investigation and

3    report and direct that no interview of you take place unless

4    your counsel is present.  It's important that you be honest,

5    candid, and truthful with the people who prepare the

6    presentence report, tell them the good things and the even

7    not-so-good things because the report will be important in my

8    decision on sentencing.  Before the day of sentencing you'll

9    have an opportunity to review that report.  I urge you to

10   review it carefully.  If there are any mistakes, point them out

11   to your lawyer so that he can point them out to me.

12          Sentencing in this case is set for November 18, 2016,

13   at 10 a.m.

14          I'll hear the government with regard to bail.

15          MS. CUCINELLA:  Your Honor, the parties have a

16   proposed package for your Honor's consideration.  Specifically,

17   we propose a $500,000 personal recognizance bond with the

18   defendant released on his own signature today but signed by two

19   financially responsible cosigners within two weeks, regular

20   pretrial supervision, that the defendant surrender his passport

21   and make no new applications, and travel restricted to the

22   continental United States.

23          THE COURT:  Any objection to that proposed bail

24   package?

25          MR. CLARK:  Not from the defense, your Honor.

1            THE COURT: I am going to approve it. The government

2   has another application, is that correct?

3            MS. CUCINELLA: That's correct, your Honor. We have

4   submitted papers on this as well, but we would like to ask that

5   the proceedings from today be sealed and that there be delayed

6   docketing until the government makes a further application to

7   have it unsealed.

8            THE COURT: But that would have a temporal limitation

9   of six months from the date of the order.

10           MS. CUCINELLA: Understood, your Honor.

11           THE COURT: Any objection to that from the defendant?

12           MR. CLARK: We join in that application, your Honor.

13           THE COURT: That order is signed.

14           Anything further from the government?

15           MS. CUCINELLA: No, your Honor.

16           THE COURT: Sealing of the transcript, I assume.

17           MS. CUCINELLA: Yes, your Honor.

18           THE COURT: Without objection, that is granted.

19           Anything further from the defendant?

20           MR. CLARK: No, your Honor. Thanks for your

21   consideration.

22           THE COURT: Thank you.

23                                 o0o

24

25